1  KURT A. KAPPES – SBN 146384
   kappesk@gtlaw.com
2  JENNIFER M. HOLLY – SBN 263705
   hollyj@gtlaw.com
3  GREENBERG TRAURIG, LLP
   1201 K Street, Suite 1100
4  Sacramento, CA  95814-3938
   Telephone:  (916) 442-1111
5  Facsimile:  (916) 448-1709

6  Attorneys for Plaintiffs
   Pyro Spectaculars, Inc.; Pyro Spectaculars
7  North, Inc.; and Pyro Events, Inc.

8

9

10                UNITED STATES DISTRICT COURT

11              EASTERN DISTRICT OF CALIFORNIA

12                  SACRAMENTO DIVISION

13

14  PYRO SPECTACULARS, INC.; PYRO          CASE NO.  2:12-CV-00299-GGH
    SPECTACULARS NORTH, INC.; and PYRO
15  EVENTS, INC.,                          **FIRST AMENDED COMPLAINT FOR
                                           DAMAGES AND INJUNCTIVE RELIEF**
16            Plaintiffs,
                                           1.    Violation of Computer Fraud and
17  v.                                           Abuse Act (18 U.S.C. §1030);
                                           2.    Violation of Penal Code § 502;
18  STEVEN SOUZA, J & M DISPLAYS, INC.,    3.    Breach of Contract;
    HI-TECH FX, LLC, MARK JOHNSON, and     4.    Tortious Interference with Contract
19  BRIAN PANTHER,                         5.    Breach of Loyalty;
                                           6.    Breach of the Implied Covenant of
20            Defendants.                        Good Faith and Fair Dealing;
                                           7.    Misappropriation of Trade Secrets;
21                                         8.    Tortious Interference with
                                                 Prospective Economic Relationship
22                                               and Economic Advantage;
                                           9.    Unfair Business Practices; and
23                                         10.   Conversion
24
                                           **JURY TRIAL DEMANDED**
25

26

27

28
                                                          Case No. 2:12-CV-00299-GGH

**COMPLAINT**

1.      Plaintiffs, Pyro Spectaculars North, Inc., Pyro Spectaculars, Inc., and Pyro Events, Inc. (collectively "Plaintiffs" or "PSI"), bring this action against Defendants Steven A. Souza ("Defendant Steven Souza"), a former employee and sales executive for the Company, J & M Displays, Inc. ("J&M Displays"), Hi-Tech FX, LLC ("Hi-Tech FX"), the current employers of Defendant Steven Souza, and co-conspirators Mark Johnson ("Mr. Johnson"), and Brian Panther ("Mr. Panther"), (collectively "Defendants").  As set forth in the recitals below, Defendants have violated a myriad of federal and state laws by conspiring to and subsequently misappropriating PSI's sensitive trade secrets and other confidential and proprietary information, and putting such wrongfully-acquired information to improper competitive use.  Defendant Steven Souza, now representing himself as Vice President of J&M Displays' West Coast Region, gained unauthorized access to PSI's computer systems, misappropriated PSI's trade secrets and confidential business information, and shared such information with J&M Displays and Hi-Tech FX.

2.      PSI brings this action, among other things, to protect its trade secrets and confidential information, and to seek redress from the harm that Defendants' wrongful conduct has caused and will cause PSI.  PSI seeks an injunction and appropriate order to, as more fully described in the prayer below: (a) enjoin Defendants from directly or indirectly disclosing or utilizing PSI's confidential, proprietary, and/or trade secret information; (b) require Defendants to return PSI property; (c) require Defendants to account for the whereabouts of PSI's property; and (d) enjoin Defendants from inducing or attempting to induce PSI customers to contract with Defendants through the use of PSI's confidential, proprietary information.  Because PSI has been and continues to be severely, immediately and irreparably harmed by Defendants' use of its most sensitive business information, PSI respectfully requests that this Court grant the relief it now seeks.

**THE PARTIES**

3.      Plaintiff Pyro Spectaculars North, Inc. is a corporation organized and existing under the laws of the State of California with its principal place of business located at 5301 Lang

Avenue, McClellan, California, 95652.  Pyro Spectaculars North, Inc.'s Articles of Incorporation were filed with the California Secretary of State on or about March 30, 2007.

4.      Plaintiff Pyro Spectaculars, Inc. is a corporation organized and existing under the laws of the State of California with its principal place of business located at 3196 North Locust Avenue, Rialto, San Bernardino County, California.   Pyro Spectaculars, Inc.'s Articles of Incorporation were filed with the California Secretary of State on or about September 28, 1979.

5.      Plaintiff Pyro Events, Inc. is a corporation organized and existing under the laws of the State of California with its principal place of business located in Claremont, California.  Pyro Events, Inc.'s Articles of Incorporation were filed with the California Secretary of State on or about January 23, 2004.

6.      Defendant Steven Albert Souza is an individual residing in El Dorado County, California.  From November 1, 1995 to January 16, 2012, PSI employed Souza as an Account Executive and Show Producer.

7.      Defendant J & M Displays, Inc. is an Iowa corporation with its principal place of business in Yarmouth, Iowa.  J&M Displays does business in California and since on or before November, 2011, actively solicited Defendant Steve Souza to terminate his employment with PSI.

8.      Hi-Tech FX, LLC is an Iowa limited liability company with its principal place of business in Fort Madison, Iowa, and uses the fictitious names EAS Technologies and J&M Displays West.  Hi-Tech FX does business in California and recently opened an office in California to accommodate Defendant Steve Souza.

9.      Mark Johnson is an individual residing in Iowa.  PSI is informed and believes that Mr. Johnson is an owner and/or operator of Hi-Tech FX and J&M Displays. Mr. Johnson send and received email to Mr. Souza in furtherance of the conspiracy.

10.      Brian Panther is an individual residing in Iowa.  PSI is informed and believes that Mr. Panther is an owner and/or operator of Hi-Tech FX. Mr. Panther made a visit to California as part of the conspiracy.

11.      PSI is informed and believes and on that basis alleges that each defendant is now,

FIRST AMENDED COMPLAINT

and at all times was doing business as ("dba"), and/or was the agent, principal, representative, employee, employer, servant, joint-venturer, partner (of any kind), parent, subsidiary, affiliate and/or alter ego of each of the other Defendants, and in doing the things alleged below, was acting within the course and scope of such authority as the dba, agent, principal, servant, representative, employer, employee, joint-venturer, partner (of any kind), parent, subsidiary, affiliate, and/or alter ego with the permission and consent of the remaining Defendants.

## JURISDICTION

12.     This is an action for violation of the Computer Fraud and Abuse Act, 18 U.S.C. § 1030 *et seq.*; Violation of California Penal Code § 502; Breach of Contract; Breach of Duty of Loyalty; Breach of the Implied Covenant of Good Faith and Fair Dealing; Misappropriation of Trade Secrets; Tortious Interference with Prospective Economic Advantage; Unfair Competition under California Business and Professions Code § 17200 et seq.; and Conversion.   Original jurisdiction in this Court is proper pursuant to 28 U.S.C. § 1331.  This Court has supplemental jurisdiction over PSI's California state law claims pursuant to 28 U.S.C. § 1367 because the state law claims are related to PSI's federal claim and derive from a common nucleus of operative facts.

13.     Defendant Souza resides in El Dorado County and is therefore subject to personal jurisdiction in this district.

14.     This Court has jurisdiction over Defendants J & M Displays, Inc., Hi-Tech FX, LLC., Mark Johnson and Brian Panther because Defendants have established minimum contacts with the State of California by undertaking business activities in the City and County of Sacramento, among other locations within the State of California.  *International Shoe Co. v. Washington* 326 U.S. 310, 316 (1945).  Defendants also solicited and contracted with Defendant Steven Souza in the State of California.  Defendant Hi-Tech FX also maintains an office in El Dorado County, California.

## VENUE

15.     Venue is appropriate in this judicial district under 28 U.S.C. § 1391 and U.S.C. § 84(b) because a substantial part of the acts or omissions giving rise to Plaintiffs' claims occurred

here, and because Defendants are subject to personal jurisdiction in this district.

## INTRADISTRICT ASSIGNMENT

16.     Assignment of this action to the Sacramento Division is proper under Civil Local Rule 3-120 in that a substantial part of the events or omissions giving rise to the claims alleged herein occurred in Sacramento and El Dorado Counties.

## GENERAL ALLEGATIONS

### Pyro Spectaculars, Inc.'s Business

17.     PSI is one of the largest producers of fireworks displays in the United States.  Pyro Spectaculars North, Inc., Pyro Spectaculars, Inc., and Pyro Events, Inc. have common ownership, officers, and directors.

18.     PSI's success in the commercial market is highly dependent on its established relationships with customers, vendors, and pyrotechnic operators.

19.     PSI employs commissioned sales executives to market and sell pyrotechnic displays and services to its customers.

### Defendant Souza's Employment With PSI

20.     On or about November 1, 1995, PSI hired Defendant Steven Souza as a sales Account Executive.  Defendant Steven Souza was hired both to serve PSI's accounts and to seek additional business accounts.  From his hire date on November 1, 1995, until he abruptly resigned, Defendant Steven Souza's job responsibilities included, but were not limited to, the marketing and sales of pyrotechnic operations and show production for Northern California and Hawaii.

21.     On November 8, 1995, PSI and Defendant Steven Souza entered into the Pyro Spectaculars, Inc. Account Executives Duties and Responsibilities - 1994 Contract ("Agreement"), containing a confidentiality agreement, discussed below.

### Background

22.     In the fireworks industry, the identity of potential customers is not information which is readily available to the public or competitors such as J&M Displays or Hi-Tech FX. There is no known public source from which one can ascertain the identity of persons who display

fireworks or who may be interested in purchasing fireworks; instead, the most common and useful way for a new fireworks company to acquire customers would be through "cold-calling," an often lengthy and costly process.[1]  PSI has compiled its customers information over the decades of its business from advertising, website contacts, publicity, customer referrals, and other sources of leads that have been gathered and forwarded to its account executives, including Defendant Steven Souza, to make a sale for PSI.  Further, information about pyrotechnic operators, their experience, training, qualifications and requirements, as well as least expensive, most effective vendors of pyrotechnic equipment and supplies, are not readily available to the public or competitors.[2]

23.     Customer information includes, but is not limited to, detailed account information, compiled over many years at great expense and countless hours.  The lists include some or all of the following information with regard to each customer: the name, address, and phone number of the customer; the "contact person"; the amount of money previously spent; line item budgets and breakdowns of costs of the displays the client purchased; and breakdowns of the specific products used in the individual displays; and lists of every pyrotechnic operator PSI used for different accounts.  Other types of trade secrets known to Defendant Steven Souza include, but are not limited to, customer feedback, complaints and customer preferences, site surveys concerning the size of the fireworks that can be shot in the customer's area, notes about how to improve the customer's shows in the future, and special requirements, preferences and procedures of the authorities that have jurisdiction over the displays.  Over the past several years, Plaintiffs have entered their trade secrets and confidential information into computerized lists, accessible via PSI's "Booking Form" program.  The information that PSI has developed at great expense and labor gives PSI a competitive advantage in the industry.  Access to it would allow anyone outside the Company to immediately solicit customers and compete with PSI - without first having to

---

[1] Although some shows are listed on PSI's internet page, they are a small fraction of the shows that PSI performs, and are well-known shows.

[2] It is standard in the pyrotechnic industry for companies to protect this confidential information, as evidenced by J&M Displays' policy and practice: http://www.jandmdisplays.com/assets/files/Main_Shooter_Packet_IA.pdf, p. 1. Indeed, J&M has sued an independent contractor in Iowa, as recently as 2008, for trade secret theft, for far less compelling facts.

compile the data.  It is PSI's policy to keep such data confidential, and employees sign agreements agreeing to do so.

24.     Throughout his career at PSI, Defendant Steven Souza enjoyed access to the Company's most sensitive business information, data and documents through the Booking Form program.  Such non-public information would be of extraordinary value to competing concerns, and PSI thus takes pains to ensure and safeguard its secrecy.

25.     PSI is keenly aware of the critical importance of protecting the confidentiality of its trade secrets and other proprietary business information.  As a result, the majority of PSI's trade secret information and data are stored on the Company's secure network servers.  PSI expends significant resources to maintain the security of this data and the integrity of the information technology servers on which it is stored.  PSI takes the security of its business information seriously and maintains up-to-date firewalls.  Every PSI employee must enter a unique user name and password to log on to his or her computer.  Then, each employee must enter a second unique user name and password to log on to the network before using any Company computer.  Finally, to access the Company database, where most of the Company trademark information is stored, the employee must again enter - for a third time - a unique user name and password to log on.  These passwords are subject to minimum complexity requirements.

26.     Another means by which PSI protects its trade secrets and confidential and proprietary business information is to enter into legally-binding confidentiality agreements with its employees.  Thus, at the outset of his employment with PSI, on November 8, 1995, PSI and Defendant Steven Souza entered into the Pyro Spectaculars, Inc. Account Executives Duties and Responsibilities - 1994 Contract ("Agreement").  A true and correct copy of the Agreement is attached hereto as Exhibit A.  When he signed the Agreement, Defendant Steven Souza agreed to certain restrictions on his conduct both during and after his employment with the Company. Section 13 of the Agreement this provides in pertinent part as follows:

> Account executives agree that all account or customer lists, trade
> secrets, unique display designs or knowledge gained are the
> exclusive property of Pyro Spectaculars, Inc. and the Account

> Executive hereby waives any rights therein.  Account Executives further agree that they will not divulge any knowledge, trade secrets, formulas, patents or unique display designs to anyone outside Pyro Spectaculars, Inc..

27. Further, at the outset of his employment with PSI, Defendant Steven Souza signed and acknowledged Section 7 of the PSI Employee Handbook, agreeing to safeguard and return to PSI all Company property promptly following the termination of his employment.  Section 7 of the Employee Handbook provides in pertinent part:

> Employees are responsible for all company property, materials, or written information issued to them or in their possession or control. Employees must return all Company property immediately upon request or upon termination of employment.  Company may take all action deemed appropriate under the law to recover or protect its property issued to employees.

A true and correct copy of the pertinent portions of the Employee Handbook is attached as Exhibit B.

28. PSI expends extraordinary effort and substantial economic resources to safeguard the secrecy of its business information and the integrity of the information technology systems on which such information is stored.

**Defendant Steven Souza Improperly Acquired PSI's Confidential Information,**

**And Then Abruptly Resigned.**

29. As a PSI commissioned sales employee, Defendant Steven Souza owed PSI a duty of loyalty, including acting for PSI's benefit, protecting PSI's interests, and subordinating his personal interests to those of PSI.

30. On information and belief, Defendant Steven Souza began planning for his January 14, 2012 resignation from PSI months in advance of January 14.  Commencing on or before December, 2011, Defendant Steven Souza began conspiring with his codefendants.

31. Defendant Steven Souza negotiated with Mr. Panther for employment with J&M Displays and Hi-Tech FX.  His employment and compensation agreement were based on an agreement that he would bring at minimum $500,000 to $600,000 in business from existing PSI

clients to J&M Displays and Hi-Tech FX.

32.     On January 14, 2012, Defendant Steven Souza tendered his resignation with PSI, effective January 16, 2012.  When Assistant Office Manager, Cindy Allie, asked Defendant Steven Souza about his employment plans following his resignation, Defendant Steven Souza informed her that he had no such plans.

33.     However, Defendant Steven Souza signed an employment agreement with Defendants J&M Displays and Hi-Tech FX on January 14, 2012, two days before the effective date of his resignation from PSI, with the intention of taking customers from and competing directly with PSI.  J&M Displays and Hi-Tech FX are now in direct competition with PSI and are soliciting a multitude of PSI's customers. The language of that Agreement makes it clear that this information is highly confidential and are trade secrets:

4. *"Confidential Business Information"* includes all proprietary information used in or related to the Company's business that is not made available by the Company to the general public, or that is not otherwise known to the general public, including information that is a "trade secret" under applicable law. *Confidential Business Information* includes: (i) information related to the promotion, sale. design, production or manufacture of the Company's products and services; (ii) information related to the Company's processes. inventions and formulas (including inventions and formulas developed by the Employee during employment with the Company); ((iii) information related to the Company's customers, including customers' special requirements; and (iv) any other proprietary information that gives the Company the opportunity to obtain a competitive advantage over competitors. *Confidential Business information* may be communicated verbally or may be contained in a document. A "Document" includes anything that may be used to record, convey or store information including but not limited to writings, drawings, blueprints, graphs, charts, computer printouts, computer disks, CD ROMS, computer memory, storage tape, recordings, and any other data compilations from which information can be obtained. *Confidential Business Information* includes information that the Employee has committed to memory even though the Employee has returned to the Company all documents containing such information. *Confidential Business Information* may be information that was created or compiled by the Company or by any other person or entity for the Company, including by the Employee. During the Employee's employment with the Company, the Employee may have access to *Confidential Business information. Confidential Business information* is the Company's exclusive property. Except for the benefit of the Company in performing the Employee's job duties for the Company, unless authorized in writing by the President of the Company: (i) the Employee shall not disclose or

use *Confidential Business information* for any purpose during Employee's employment with the Company and for four (4) years after the termination of Employee's employment; and (ii) if the Company expressly identifies information as "trade secret" information, Employee shall not use or disclose the trade secret at any time unless the trade secret becomes widely known in the industry or becomes available from public sources. The Employee's agreement not to disclose or use *Confidential Business information* applies regardless whether the Employee is discharged or quits for any reason. This paragraph does not apply to any customers that employee generates during the term of this agreement.

5. The company is invests significant time and expense in the training and licensing of its employees, therefore, the Employee shall not solicit any customer of the Company to engage in business that would be competitive with the services normally offered by the Company for a period of four (4) years following employment. This paragraph does not apply to any customers that employee generates during the term of this agreement.

6. Employee agrees that any breach of this Agreement by Employee may result in irreparable injury to the Company, and that the Company shall be entitled to an injunction to prevent the breach or threatened breach of this Agreement in addition to any other legal or equitable remedy to which the Company may be entitled. If the Company is required to take any action, including initiating any legal preceding (sic) to remedy Employee's breach or threatened breach of this Agreement, the Company may recover the reasonable attorney's fees and costs incurred by the Company. The Company's waiver of any breach of this Agreement shall not be a waiver at any subsequent breach by the Employee. No waiver shall he valid unless in writing signed by the Company's President.

34.     On or about the date of his resignation, using PSI proprietary contact information, Defendant Steven Souza sent out solicitation letters *en masse* to each of PSI's Northern California and Hawaii accounts informing these accounts that Defendant Steven Souza has joined "J&M Displays West as Vice President of the West Coast Region" and "greatly appreciated [their] professional and personal relationship in the past and [looks] forward to discussing this new opportunity with [the account]."  PSI Executive Vice President, Ian Gilfillan, received copies of solicitation letters from various PSI customers on January 19, 2012.

35.     On or about January 2012, PSI discovered that, in December 2011, Defendant Steven Souza, while still employed as an account executive with PSI and in breach of his duty of loyalty to it, requested that Mark Silveira, in his capacity as Madera Facilities Manager, inform him who the vendor was that sold PSI their fireworks racks.  Racks hold the tubes that are used

to discharge fireworks.  Defendant Steven Souza informed Mr. Silveira he needed between five and ten thousand racks, a tremendous amount, and alleged he was starting his own company and was looking for a supplier.

**Conversion and Interruption of PSI's Business**

36.     On or about January 17, 2012, Stephanie Walker, a clerk in accounts payable for PSI, contacted AT&T, the provider of Defendant Steven Souza's PSI office voice telephone line and office facsimile line, to request the lines be transferred back to PSI equipment.  While Defendant Steven Souza utilized those lines during his employment with PSI, PSI was the account holder and directly received and paid for the AT&T bills connected with those lines. Subsequent to his resignation, Defendant Steven Souza retained and failed to return the Company-provided facsimile line despite PSI's requests.

37.     On or about January 19, 2012, Ms. Walker escalated the account to PSI Human Resources Manager, Paul Colvin, as AT&T had informed Ms. Walker that they were unable to transfer the facsimile line because Defendant Steven Souza's wife, Sherry Souza, had already transferred the facsimile line to a personal account.  When Mr. Colvin contacted AT&T, the AT&T representative informed Mr. Colvin that on or about January 12, 2012, Sherry Souza, called AT&T to transfer both PSI lines to Defendant Steven Souza's personal numbers.  The AT&T representative informed Mr. Colvin that the office voice number could be transferred back to another PSI number, but that the facsimile line could not as Sherry Souza had password-protected the line.  Mr. Colvin requested that the office voice line be transferred and the AT&T representative agreed to do so.

38.     On January 20, 2012, Mr. Colvin tested the office voice line to see if it was still working.  It was not.  When Mr. Colvin contacted AT&T a second time, an AT&T representative went through the process again of transferring the office voice line back to PSI equipment.

39.     Later on January 20, 2012, PSI employee, Kevin Gilfillan, called the office voice line and Defendant Steven Souza answered the phone.  Mr. Colvin contacted AT&T a third time, and a representative informed him that Sherry Souza had called AT&T again to transfer the PSI

office voice line to Steven Souza's personal account.  Mr. Colvin re-transferred the office voice line once more to a new PSI line, and password protected the line to prevent further misuse.  Mr. Colvin was unable to regain possession of the PSI facsimile line, and Steven Souza continues to intercept fax communications intended for PSI.  Steven Souza continues to refuse to return use of the facsimile line, despite PSI's requests that he do so.

### **Computer Theft**

40.     On or about January 25, 2012, PSI discovered that, on January 14, 2012, Defendant Steven Souza, while still employed as a commissioned account executive with PSI and in breach of his duty of loyalty to it and while acting as an agent of J&M Displays and Hi-Tech FX, intentionally accessed his assigned PSI computer, attached a 60 gigabyte Western Digital external hard drive, and transferred at least 60 PSI sensitive and confidential, proprietary documents - without Company authorization or in excess of his authorization - including customer lists, pricing lists, proposals, site plans, operation manuals, operation procedures, customer contracts, supplier and vendor lists, pyrotechnic operator lists, records, histories, qualifying information, and design script files.  Defendant Steven Souza then attached six additional, separate USB drives and transferred the same files.

41.     On January 14, 2012, Defendant Steven Souza then installed "Disk Redactor," a free wiping software, on his assigned PSI computer, and deleted and/or attempted to delete, write over, and wipe over 300 computer files from the computer.  As an example, Defendant Steven Souza's cellular phone, which was reimbursed by PSI in order to facilitate his marketing endeavors with PSI, was backed up through his iTunes account on his assigned PSI computer.  Defendant Steven Souza then deleted his iTunes account from his computer and used "Disk Redactor" to wipe and write over the iTunes file with a sequence of "0's."

42.     Upon information and belief, Defendants have also misappropriated confidential and proprietary data and trade secrets embodied in physical files of PSI, including but not limited to documents containing highly sensitive financial information, such as Bookings Forms, contracts and proposals.  Upon PSI's request, on January 27, 2012, Defendant Steven Souza

returned eight boxes of Company documents dated from 2002 through 2010, which were immediately indexed.   As examples, Defendant Steven Souza's "2007" box contained 941 documents.   Defendant Steven Souza's "2008" box of documents contained 1752 pages of confidential Company documents.   Conversely, there were only 848 documents for the combined years of 2009/2010 and no box was delivered entitled "2011."   These files were mostly historical data and did not contain any current documents believed to be in Defendant Steven Souza's possession, including, but not limited to, files related to the City of Elk Grove, California State Fair, Sacramento River Cats, City of Vacaville, Modesto Nuts Professional Baseball, Kirkwood Ski Resort, Sugar Bowl Ski Area, Bear Valley Ski Company, Bill McAnally Racing, etc. Defendant Steven Souza failed to return these materials to PSI when he resigned, in violation of Company policy.  Defendants continue to have access to these physical files

43.   Further, while Defendant Steven Souza returned his 2011 PSI-assigned laptop, he failed to return laptops PSI assigned to him in 2002 and 2005.  Those laptops, which Defendant Steven Souza used during his employment with PSI, had over nine years worth of PSI's confidential, proprietary data stored on it, and Defendants have access to PSI's Booking Form program with this computer.

44.   Defendant Steven Souza transferred PSI's sensitive and confidential, proprietary information in the form of Booking Forms, proposals, contracts, and other information directly to J&M Displays, Hi-Tech FX, Mr. Panther and Mr. Johnson.  Defendants admit to subsequently using that information to create proposals to PSI clients at the rate of five to six per day.  The proposals Defendants submitted on behalf of J&M Displays and Hi-Tech FX are similar to those Defendant Steven Souza previously developed while still an employee with PSI, and offer slightly more product for the same or slightly lower budget.  Defendant Steven Souza even sent some proposals to PSI customers on behalf of J&M Displays and Hi-Tech FX in the same form and design as PSI's proposals.

45.   Defendants also misappropriated customer contracts, and altered the J&M Displays/Hi-Tech customer contracts to include language from the PSI customer contracts.

FIRST AMENDED COMPLAINT

46.     Upon information and belief, in further violation of his fiduciary duty and duty of loyalty, since his resignation, Defendant Steven Souza has continued to usurp corporate opportunities using PSI's confidential and proprietary information to contact PSI clients, vendors and pyrotechnic operators in order to build his business under J&M Displays and Hi-Tech FX. Upon information and belief, Defendant Steven Souza has already submitted multiple financial proposals to PSI clients, having used PSI confidential, proprietary information as the basis for these proposals.

47.     The pyrotechnic industry operates on extremely thin profit margins.  As a result, every operational advantage, such as PSI's economically efficient supply chain, is a jealously-guarded business secret.  The information misappropriated by Defendants includes operational data and strategic planning materials that would enable a competitor to replicate PSI's successful operation without any of the substantial investment of time and resources required to develop such successful business models.  In sum, Defendants now possess a wide variety of trade secrets and other confidential and proprietary business information belonging to PSI - information that will endow J&M Displays and Hi-Tech FX with significant competitive advantage relative to the Company.

48.     Due to his many years of experience with PSI, Defendant Steven Souza knew before he took the business information belonging to PSI that it would be of enormous competitive value to J&M Displays and Hi-Tech FX.

49.     Defendants J&M Displays, Hi-Tech FX, Mr. Panther and Mr. Johnson implicitly conditioned Defendant Steven Souza's employment with J&M Displays and Hi-Tech FX on Defendant Steven Souza's misappropriation of PSI trade secrets and/or confidential information, and direct solicitation of PSI's customers using PSI's trade secret and/or confidential information. At the same time, they attempted to hedge their bets by having Steven Souza represent that there was no legal impediment to their conspiracy.

50.     In his new role as Vice President of the West Coast Region of J&M Displays West which, to PSI's information and belief, had previously not done business in the California

and Hawaii markets, Defendant Steven Souza has used and/or disclosed PSI's confidential and proprietary information in his knowledge or possession as he seeks to position his new employers' operations against PSI's in an extremely competitive marketplace.

51.     Defendants' actions are even more egregious in that Defendants are using PSI information to induce PSI customers to sign multi-year agreements with J&M Displays/Hi-Tech FX for a small product bonus.

52.     PSI has already lost six known accounts, and Defendants' actions continue to threaten PSI with serious, competitive harm. Mr. Souza's wife has pledged to take as many shows as they can, and the other Defendants have expressly said they will use whatever information he provides.

## FIRST CLAIM FOR RELIEF

## VIOLATION OF THE COMPUTER FRAUD AND ABUSE ACT (18 U.S.C. § 1030)

(Against all Defendants)

53.     Plaintiffs hereby realleges and incorporates by reference each and every allegation contained in paragraphs 1 - 52 of the Complaint.

54.     PSI's servers are protected computers that are used in or affect interstate commerce.

55.     In or about January 2012, Defendant Steven Souza, while still employed as a commissioned sales person with PSI and in breach of his duty of loyalty to it and while acting as an agent of J&M Displays and Hi-Tech FX, intentionally accessed his assigned PSI protected computer in excess of his authorized access.

56.     Defendant Steven Souza connected multiple computer hard drives and flash drives, and transferred PSI confidential, proprietary information, in the sum of over 60 confidential files and documents, to Mr. Johnson, Mr. Panther, J&M Displays and Hi-Tech FX.

57.     Defendant Steven Souza then deleted from the PSI protected computer over 300 files containing PSI work product.  He also downloaded computer wiping software, "Disk Redactor," to wipe and overwrite files from his assigned PSI computer without authorization.

58.    Defendant Steven Souza conspired to commit the above actions with Mr. Johnson, Mr. Panther, J&M Displays and Hi-Tech FX with the agreement that he would bring over at minimum $500,000 to $600,000 worth of PSI clients to J&M Displays and Hi-Tech FX.

59.    Further, as detailed above, *after his resignation*, Steven Souza usurped PSI's facsimile and voice phone lines with the intent to intercept communications directed to PSI.  On or about January 16, 2012, Stephanie Walker, a clerk in accounts payable for PSI, contacted AT&T, the provider to Steven Souza's PSI-assigned office voice and facsimile lines, to request the lines be transferred back to PSI equipment.  On or about January 19, 2012, Ms. Walker escalated the account to PSI Human Resources Manager, Paul Colvin, as AT&T had informed Ms. Walker it was unable to transfer the lines.  An AT&T representative then informed Mr. Colvin that on or about January 12, 2012, Defendant Steven Souza's wife, Sherry Souza, called AT&T to transfer both PSI lines to Defendant Steven Souza's personal numbers.  The AT&T representative informed Mr. Colvin that the office voice number could be transferred back to another PSI number, but that the facsimile line could not as Sherry Souza had password-protected the line.  Mr. Colvin requested that the office voice line be transferred and the AT&T representative agreed to do so.

60.    On January 20, 2012, Mr. Colvin tested the office voice line to see if it was still working.  It was not.  When Mr. Colvin contacted AT&T a second time, an AT&T representative went through the process again of transferring the mobile phone line back to another PSI number.

61.    Later on January 20, 2012, PSI employee, Kevin Gilfillan, called the office voice line and Defendant Steven Souza answered the phone.  Mr. Colvin contacted AT&T a third time, and a representative informed him that Sherry Souza had called AT&T again to transfer the PSI office voice line to Defendant Steven Souza's personal account.  Mr. Colvin had AT&T re-transfer the office voice line once more to PSI equipment, and password protected the line to prevent further misuse.  Mr. Colvin was unable to regain possession of the PSI facsimile line as a result of the actions of Defendant Steven Souza and Sherry Souza, and Defendants continue to

intercept fax communications intended for PSI.  Defendant Steven Souza refuses to return use of the facsimile line, despite PSI's requests that he do so.

62.     Further, PSI is informed and believes that Defendant Steven Souza retained a copy of PSI's previous model of the Booking Form Program from a previously-assigned laptop or other electronic storage device.  Despite PSI's demands that he return all PSI property and information, Defendant Steven Souza refuses to return this program.    This program has over nine years of PSI's confidential, proprietary information including proposals, budgets and other financial information that Defendant Steven Souza could use in direct competition with PSI.

63.     These actions constitute a violation of 18 U.S.C. sections 1030(a)(2)(C); 1030(a)(4); and 1030(a)(5)(A)-(C).

64.     PSI has retained the use of a computer forensics expert to retrieve the data deleted, wiped and transferred from its computer.

65.     As a result of Defendant Steven Souza's unauthorized access of PSI's computer files and private communications while working as an agent of J&M Displays and Hi-Tech FX, PSI is informed and believes, and thereon alleges, that it has suffered damages in the past year of at least $5,000.00 and anticipates that it will continue to suffer damages for, among other things, (i) the expenses paid to a computer forensics expert for assessing the damages done to PSI's computer when Defendant Steven Souza transferred, deleted and wiped files from it and determining whether those files could be recovered, (ii) retention of counsel to bring this case, and (iii) the amount of business lost by PSI's inability to access those files and communications.

66.     PSI is entitled to compensatory damages for the economic losses directly and proximately caused by Defendants' violations of 28 U.S.C. section 1030.

## SECOND CLAIM FOR RELIEF

## VIOLATION OF PENAL CODE § 502

(Against all Defendants)

67.     Plaintiffs re-allege and incorporate herein by reference the allegations contained in paragraphs 1 - 52 of this Complaint.

68.     PSI maintains and owns a computer network, computer programs, or software and a computer system as those terms are defined in the California Penal Code section 502 (collectively "Computer System"), and which includes the computers and network provided by PSI to Defendant Steven Souza while he was employed by PSI.  On its Computer System, PSI maintains its data, including its confidential, proprietary and trade secret information.

69.     PSI is informed and believes and thereon alleges that Defendant Steven Souza knowingly and without permission or exceeding permission, accessed PSI's Computer System and the property and data contained therein.  Defendant Steven Souza took, copied, and thereafter made use of data and supporting documentation from PSI's Computer System. Defendant Steven Souza did these acts knowingly and without permission under the California Penal Code section 502 and in violation of PSI's express computer usage policies which he agreed to follow.  Defendant Steven Souza then installed and ran a free program, "Disk Redactor," to overwrite and delete all evidence of his misdeeds in derogation of his legal obligations under the statute.  He acted for the benefit of J&M Displays and Hi-Tech FX and/or his own personal interests and therefore, his actions were "without permission."  Defendant Steven Souza's actions violated PSI's policies, including, but not limited to, PSI's Employee Handbook and the Pyro Spectaculars, Inc. Account Executives Duties and Responsibilities - 1994 Contract.

70.     PSI is informed and believes, and thereon alleges, that Defendants J&M Displays, Hi-Tech FX, Inc, Mr. Panther and Mr. Johnson conspired with Defendant Steven Souza in performing these acts, negotiating Defendant Steven Souza's employment with J&M Displays and Hi-Tech FX based upon an agreement that he would bring at minimum $500,000 to $600,000 in business from existing PSI clients to J&M Displays and Hi-Tech FX.

71.     PSI is informed and believes, and thereon alleges, that Defendants engaged in these actions knowingly and intentionally, and for the purposes of wrongfully obtaining and controlling PSI's property and data.

72.     PSI is informed and believes and thereon alleges that Defendants' conduct

FIRST AMENDED COMPLAINT

violates California Penal Code section 502, including, without limitation, California Penal Code section 502(c)(1), (2), (3), (6) and (7).

73.    As an actual and proximate cause of Defendants' conduct, PSI has suffered actual and/or consequential damages in an amount to be proven at the time of trial, but in excess of the minimum jurisdictional amount of this Court.

74.    PSI is informed and believes and on that basis alleges that after knowingly accessing PSI's Computer System and PSI's confidential and proprietary information without authorization or permission, or exceeding authorization or permission, Defendants retained some or all of the property and data and other information that they obtained from Defendant Steven Souza's unlawful conduct.  Accordingly, PSI is entitled to injunctive relief and other equitable relief, including, without limitation, permanent injunctive relief, restitution, and disgorgement of any and all profits or other benefits that Defendants have obtained in connection with this illegal conduct.

75.    PSI is informed and believes and on that basis alleges that each of the aforementioned acts was done willfully and maliciously, with the deliberate intent to injure PSI and with conscious disregard of PSI's rights, justifying the award of exemplary and punitive damages.

### THIRD CLAIM FOR RELIEF

### BREACH OF WRITTEN CONTRACT

(Against Defendant Steven Souza)

76.    Plaintiffs re-allege and incorporate herein by reference the allegations contained in paragraphs 1 - 52 of this Complaint.

77.    The Pyro Spectaculars, Inc. Account Executives Duties and Responsibilities - 1994 Contract ("Agreement") constitutes a valid and binding contract between PSI, on the one hand, and Defendant Steven Souza, on the other hand, supported by valuable consideration.  The confidentiality covenants and other provisions contained in the Agreement are reasonably necessary to protect legitimate protectable interest in confidential, proprietary and trade secret

information, customer relationships, work force and goodwill.  Further, the Employee Handbook, which Defendant Steven Souza signed and acknowledged during his employment, provides that Defendant Steven Souza must return all Company property immediately upon termination of his employment.

78.    PSI fully performed its obligations under the Agreements or has been excused therefrom.

79.    Defendant Steven Souza has breached and continues to breach the Agreements by:

(a)    Obtaining without authorization, or in excess of his authorization, PSI's confidential, proprietary and/or trade secret information in violation of the Agreement;

(b)    Failing to return PSI property in violation of the Employee  Handbook;

(c)    Utilizing PSI's confidential, proprietary and/or trade secret information to benefit PSI's competitor, J&M Displays/Hi-Tech FX.

80.    Upon information and belief, Defendant Steven Souza fraudulently concealed his breach by deleting, wiping and writing over the files evidencing his misappropriation of confidential customer information, in violation of the contract.

81.    As a result of any one of these breaches, PSI has been injured and faces irreparable injury.  PSI is threatened with losing customers, its competitive advantage, its trade secrets and good will in amounts which may be impossible to determine, unless Defendants are enjoined and restrained by order of this Court.  PSI seeks damages against Defendant Steven Souza, according to proof.

## **FOURTH CLAIM FOR RELIEF**

## **TORTIOUS INTERFERENCE WITH CONTRACT**

(Against Defendants Mark Johnson, Brian Panther, J&M Displays and Hi-Tech FX)

82.    Plaintiffs re-allege and incorporate herein by reference the allegations contained in paragraphs 1 - 52 of this Complaint.

83.     The Pyro Spectaculars, Inc. Account Executives Duties and Responsibilities - 1994 Contract ("Agreement") constitutes a valid and binding contract between PSI, on the one hand, and Defendant Steven Souza, on the other hand, supported by valuable consideration.

84.     Upon information and belief, Defendants Mr. Johnson, Mr. Panther, J&M Displays and Hi-Tech FX knew of the existence of the Agreement governing Defendant Steven Souza's employment with PSI.

85.     Defendants Mr. Johnson, Mr. Panther, J&M Displays and Hi-Tech FX intentionally induced Defendant Steven Souza to breach the Agreement with PSI by conspiring with Defendant Steven Souza to remove and retain trade secret, proprietary and confidential information and/or other property belonging to PSI, without authorization, or in excess of his authorization, for their economic advantage and to unfairly compete with PSI based on the agreement that Defendant Steven Souza would bring at minimum $500,000 to $600,000 worth of PSI clients to J&M Displays and Hi-Tech FX.

86.     Defendant Steven Souza has breached and continues to breach the Agreements by:

(a)     Obtaining without authorization, or in excess of his authorization, PSI's confidential, proprietary and/or trade secret information in violation of the Agreement;

(b)     Failing to return PSI property in violation of the Employee  Handbook;

(c)     Utilizing PSI's confidential, proprietary and/or trade secret information to benefit PSI's competitor, J&M Displays/Hi-Tech FX.

87.     As a result of Defendants' Mr. Johnson, Mr. Panther, J&M Displays and Hi-Tech FX intentional conduct, PSI has been injured and faces irreparable injury.  PSI is threatened with losing customers, its competitive advantage, its trade secrets and good will in amounts which may be impossible to determine, unless Defendants are enjoined and restrained by order of this Court.  PSI seeks damages against Defendants Mr. Johnson, Mr. Panther, J&M Displays and Hi-Tech FX, according to proof.

**FIFTH CLAIM FOR RELIEF**

**BREACH OF DUTY OF LOYALTY**

(Against Defendant Steven Souza)

88.     Plaintiffs re-allege and incorporate herein by reference the allegations contained in paragraphs 1 - 52 of this Complaint.

89.     As PSI's commissioned account executive, Defendant Steven Souza owed PSI a duty of care, diligence, skill and loyalty, including acting for PSI's benefit, protecting PSI's interests, and subordinating his personal interests to those of PSI.

90.     Defendant Steven Souza breached his duty to PSI as a result of the acts alleged herein, including, but not limited to: (1) obtaining without permission and without authorization or in excess of his authorization PSI's data, including confidential and proprietary information (regardless of whether it rises to the level of a trade secret) that he intended to use during his employment with PSI's competitors, J&M Displays/Hi-Tech FX, and with the intent to unfairly compete with PSI after he left his employment with PSI; (2) using PSI's time and resources to plan his move to J&M Displays/Hi-Tech FX; and (3) using his status for his own benefit and his future move to J&M Displays/Hi-Tech FX in his interactions with customers and fellow employees.

91.     As a direct and proximate result of Defendant Steven Souza's breach of his duty owed to PSI, PSI has suffered damages in an amount to be determined in accordance with proof at trial

92.     Defendant Steven Souza's actions were willful, wanton, malicious, oppressive, and undertaken with the intent to defraud PSI, and justify the award of exemplary and punitive damages.

**SIXTH CLAIM FOR RELIEF**

**BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING**

(Against Defendant Steven Souza)

93.     Plaintiffs re-allege and incorporate herein by reference the allegations contained

in paragraphs 1 - 52 of this Complaint.

94.     The Pyro Spectaculars, Inc. Account Executives Duties and Responsibilities - 1994 contract ("Agreement") constitutes a valid and binding contract between PSI, on the one hand, and Defendant Steven Souza, on the other hand, supported by valuable consideration.  PSI fully performed its obligations thereunder or has been excused therefrom.

95.     Implied in the parties' contract was a covenant that the parties would deal with each other in good faith and would not engage in any conduct to deprive the other of the benefit of the agreement.

96.     Defendant Steven Souza failed to perform his obligations under the Agreement in good faith by knowingly, intentionally, and in bad faith downloading, transferring, and then deleting and wiping PSI confidential, proprietary files and documents from his PSI assigned laptop before his resignation, and transferring those documents to himself and his new employer.

97.     As a direct and proximate result of Defendant Steven Souza's knowing, intentional, and bad faith breach of the parties' contract's implied covenant of good faith and fair dealing, PSI has suffered damages in an amount to be determined at trial.

## SEVENTH CLAIM FOR RELIEF

## MISAPPROPRIATION OF TRADE SECRETS

(Against all Defendants)

98.     Plaintiffs re-allege and incorporate herein by reference the allegations contained in paragraphs 1 - 52 of this Complaint.

99.     At all relevant times, PSI was in possession of trade secret information as defined by California's Uniform Trade Secrets Act ("CUTSA"), Civil Code section 3426.1(d), which consisted of, *inter alia*, its customer lists, pricing lists, proposals, site plans, operation manuals, operation procedures, customer contracts, supplier and vendor lists, pyrotechnic operator lists, records, histories, qualifying information, and design scripting software files.

100.    As described above, Defendant Steven Souza was provided access to trade secrets in his position as Account Executive in PSI's Northern California and Hawaii markets.  PSI's

proprietary business and customer information that Defendant Steven Souza was provided access to constitute trade secrets because PSI, as described herein, derives independent economic value from that information, such information is not generally known nor readily ascertainable by proper means by other persons who can obtain economic value from its disclosure or use, and the information is the subject of reasonable efforts to maintain its secrecy. As Mr. Souza's Employment Agreement documented, the value of such information is worth substantial sums of money to Defendants, who are paying him a handsome sum for his deeds.

101.    PSI's customer list was more than a mere compilation of customer names.  The customer list is a compilation developed over decades that had economic value not only in that it contained the identifying information about PSI's customers, including contact information, but also the complete Booking Forms which also included which products and plans those customers purchased in the past, the financial line item breakdowns, and individual detail of the products the customers purchased, etc.  Such a list therefore provides not only the name of a PSI customer, but would allow a competitor to know exactly what proposal would be necessary to undercut PSI's proposal with similar services, cost breakdown of the displays that the customer had previously purchased and individual products necessary to create the same fireworks display that the customer had purchased in the past.

102.    PSI kept this information, including the Booking Forms, unknown to others, and took steps to keep this information secret through the following means:

(a)    Controlled access to company information through network security measures designed to limit access through complex identities and passwords;

(b)    Limited access to company servers through strict controls over web access and internal access by the same methods and additional measures for login and identity of authorized personnel;

(c)    Anti-hacker and anti-spyware software to prevent unauthorized access to web/internet access; and

(d)    Confidentiality agreements with show producers who are required to use

company software to access confidential information to generate proposals and service existing customers.

103.   PSI's vendor list has economic value in that it described the businesses from whom PSI purchased its pyrotechnic products.  This list contains vital information as to the owners, price guides, and use of products produced.  PSI kept this list unknown to others, and took steps to keep this information secret by ensuring access to computerized data was controlled through separate keywords, access IDs, passwords and related access information.  Defendant Steven Souza was familiar with all of the access points and contact information.  It is understood that Defendants maintain all information regarding all PSI vendors in computerized and printed records in their possession.

104.   PSI's pyrotechnic operator list has economic value in that it described the operators with whom PSI performed business.  This list contains vital information as to which pyrotechnic operators were qualified in the area to perform services for PSI, records, histories and qualifying information, information relating to the relationships the different pyrotechnic operators had with local fire marshals.  This list is sensitive to PSI because, for example, PSI can only put on as many Fourth of July shows as it has operators, which are hard to come by.  A competitor with this information would not only know how to directly contact the operators that PSI has relationships with, but would know the nature of the operators' relationships with certain customers, with certain fire marshals, and would know what would be necessary to entice the operators to sign with them rather than with PSI.  PSI kept this list unknown to others, and took steps to keep this information secret by ensuring access to computerized data was controlled through separate keywords, access IDs, passwords and related access information.  Defendant Steven Souza was familiar with all of the access points and contact information.  It is understood that Defendants maintain all information regarding all PSI operators in computerized and printed records in their possession.

105.   Despite PSI's demand for the return of all confidential and proprietary files to it, Defendant Steven Souza has failed to return these files.  After PSI's demand, Defendant Steven

Souza did produce eight boxes of confidential documents in his possession on January 27, 2012, these files were mostly historical data and did not contain any current documents believed to be in Defendants' possession, custody or control, including, but not limited to, files related to the City of Elk Grove, California State Fair, Sacramento River Cats, City of Vacaville, Modesto Nuts Professional Baseball, Kirkwood Ski Resort, Sugar Bowl Ski Area, Bear Valley Ski Company, Bill McAnally Racing, etc.

106.  Defendant Steven Souza conspired to commit the above actions with Mr. Johnson, Mr. Panther, J&M Displays and Hi-Tech FX with the agreement that Defendant Steven Souza would bring at minimum $500,000 to $600,000 worth of PSI clients to J&M Displays and Hi-Tech FX.

107.  Defendant Steven Souza transferred PSI's sensitive and confidential, proprietary information in the form of Booking Forms, proposals, contracts, and other information directly to J&M Displays, Hi-Tech FX, Mr. Panther and Mr. Johnson.  Defendants admit to subsequently using that information to create proposals to PSI clients at the rate of five to six per day.  The proposals Defendants submitted on behalf of J&M Displays and Hi-Tech FX are similar to those Defendant Steven Souza previously developed while still an employee with PSI, and offer slightly more product for the same or slightly lower budget.  Defendant Steven Souza even sent some proposals to PSI customers on behalf of J&M Displays and Hi-Tech FX in the same form and design as PSI's proposals.

108.  Defendants also misappropriated customer contracts, and altered the J&M Displays/Hi-Tech customer contracts to include language from the PSI customer contracts.

109.  Defendants have and will continue to wrongfully use PSI's trade secrets unless enjoined.  Defendants' wrongful conduct in misappropriating PSI's customer, vendor and pyrotechnic operator lists, unless and until enjoined and restrained by order of this court, will cause great and irreparable injury to Plaintiffs' business in that PSI may lose significant business before this action can be brought to trial.  PSI is in the process of initiating contracts for the Fourth of July season, the biggest season for fireworks displays.  Defendants, by their fraudulent

and deceitful conduct to date, have demonstrated that they cannot be counted on to avoid disclosing and utilizing PSI's trade secrets.

110.   As a direct and proximate result of Defendants' wrongful conduct, PSI has been damaged in an amount to be determined at trial.

111.   Plaintiffs are informed and believe and on that basis allege that Defendants' aforementioned acts were willful, oppressive, fraudulent and malicious in that Defendants misappropriated PSI's lists with the deliberate intent to injure PSI's business and improve their own position in the industry.   Plaintiffs are therefore entitled to punitive damages.

112.   Plaintiffs have no adequate remedy at law for the injuries currently being suffered, or which it may suffer, in that Defendants will continue to misappropriate PSI's trade secrets and Plaintiffs would be required to maintain a multiplicity of judicial proceedings to protect its interests.

## EIGHTH CLAIM FOR RELIEF

## TORTIOUS INTERFERENCE WITH ECONOMIC RELATIONSHIP

## AND PROSPECTIVE ECONOMIC ADVANTAGE

(Against all Defendants)

113.   Plaintiffs hereby realleges and incorporates by reference each and every allegation contained in paragraphs 1 - 52 of the Complaint.

114.   PSI's relationship with its customers is advantageous to PSI.   There exists a probability of future economic benefit to PSI from its business relationship with its customers.

115.   PSI is informed and believes and on that basis alleges that Defendants intentionally interfered with PSI's business relationship that existed between PSI and at least one of its customers.

116.   Defendants' intentional wrongful conduct, including Defendant Steven Souza's breach of the duty of loyalty to PSI while in its employ, and Defendants' violation of the Computer Fraud and Abuse Act, was intended to, and did, disrupt the economic relationships between PSI and at least one of its customers.

117.   As a direct and proximate result of Defendants' conduct, PSI has suffered damages in an amount to be determined at trial.

118.   In doing the acts herein alleged, Defendants acted with oppression, fraud, malice, and in conscious disregard of the rights of PSI, and PSI is therefore entitled to punitive damages according to proof at the time of trial.

## NINTH CLAIM FOR RELIEF

### UNFAIR COMPETITION (Cal. B & P Code § 17200 *et seq.*)

(Against all Defendants)

119.   Plaintiffs re-allege and incorporate herein by reference the allegations contained in paragraphs 1 - 52 of this Complaint.

120.   California Business and Professions Code section 17200 *et seq.* prohibits unfair competition in the form of any unlawful, unfair, or fraudulent business practice.

121.   Whether or not PSI's confidential and proprietary information rises to the level of trade secrets, Defendants violated Section 17200 of the California Business and Professions Code by diverting PSI's relationship with its customers, vendors and pyrotechnic operators to J&M Displays and Hi-Tech FX with the express agreement that Defendant Steven Souza would bring over at minimum $500,000 to $600,000 worth of PSI clients to J&M Displays and Hi-Tech FX, in part by improperly copying, removing and using PSI's property, including its confidential and proprietary information.

122.   As set forth above, Defendants' conduct is unlawful, unfair, and fraudulent.

123.   Accordingly, Defendants have committed unlawful, unfair or fraudulent acts as defined in California Business and Professions Code section 17200.

124.   Defendants' conduct is intentional, and Defendants are fully aware that it is illegal, unfair and fraudulent.

125.   Defendants are fully aware of the harm (both financial and otherwise) that their conduct has caused, and continues to cause, Plaintiffs.

126.    As a result of the foregoing, PSI will suffer immediate and irreparable harm, and have suffered, and will continue to suffer, harm including harm that cannot be adequately compensated by money damages.  Further, Defendants have been unjustly enriched in an amount to be proven at the time of trial, entitling PSI to restitution and/or other equitable relief.

## TENTH CLAIM FOR RELIEF

## CONVERSION

### (Against all Defendants)

127.    Plaintiffs re-allege and incorporate herein by reference the allegations contained in paragraphs 1 - 52 of this Complaint.

128.    Based on conduct wholly independent of the existence, knowledge, misappropriation and usage of PSI's trade secrets, Defendant Steven Souza removed and retained non-trade secret but still proprietary and confidential information and/or other property belonging to PSI, without authorization, or in excess of his authorization, for his personal economic advantage and, upon information and belief, to use for the benefit of J&M Displays and Hi-Tech FX to unfairly compete with PSI.

129.    Upon information and belief, Defendants J&M Displays, Hi-Tech FX, Mr. Panther and Mr. Johnson conspired with Defendant Steven Souza to remove and retain non-trade secret but still proprietary and confidential information and/or other property belonging to PSI, without authorization, or in excess of his authorization, for their economic advantage and to unfairly compete with PSI.

130.    As a proximate result of Defendant Steven Souza's removal and retention of non-trade secret but still proprietary and confidential information and property, Defendants have caused PSI to suffer damages in an amount to be proven at trial.

131.    Each of the acts of conversion by Defendants was done willfully and  maliciously, with the deliberate intent to injure PSI's business, thereby entitling PSI to exemplary damages and/or attorneys' fees to be proven at trial.

**PRAYER**

WHEREFORE, Plaintiffs pray for judgment as follows:

1.      For damages in an amount according to proof at trial;

2.      For restitution and/or disgorgement of all money, profits, compensation or property Defendants have acquired or will acquire by any wrongful or unlawful means or as a result of Defendant Steven Souza's breach of loyalty;

3.      For the imposition of a constructive trust on all profits and/or monies Defendants wrongfully obtained;

4.      For an order requiring Defendants to show cause, if any they have, why they should not be enjoined as set forth below, during the pendency of this action;

5.      For an order requiring Defendants, as part of a writ of replevin, within 24 hours of notice to Defendants or their counsels of the terms of this Order, to:

      (1) return all PSI trade secrets and confidential information;

      (2) return all PSI property;

      (3) return and provide access to any and all media and electronic storage devices and virtual repositories containing any PSI property including, but not limited to, any portable USB storage devices and any other external hard drives used by him;

      (4) produce any and all electronic devices operated or used by Defendants to verify the use, access, disclosure, printing, copying, and return of PSI property;

      (5) produce any and all online storage areas utilized by Defendants for inspection to verify use, access, disclosure, printing, copying, and return of PSI property;

6.      For an order for expedited discovery to verify the use, access, disclosure, printing, copying, and return of PSI property;

7.      For a temporary restraining order, a preliminary injunction, and a permanent injunction, requiring Defendants, including their agents, servants and employees:

      (a)      to refrain from using PSI's confidential information to solicit any business from, or initiate any further contact with, any customer of PSI whom Defendant Steven Souza

served at PSI, and/or any prospective customers or any customers whose identities he learned as a result of his employment with PSI (the "Customers"), including for the purpose of advising any Customers of his new affiliation with J&M Displays/Hi-Tech FX or for the purpose of inviting, encouraging, or requesting the transfer of any Customer contracts or accounts from PSI to J&M Displays/Hi-Tech FX;

(b)     to refrain from continuing the misappropriation of PSI's trade secrets by ongoing use or disclosure of PSI's proprietary information, including, but not limited to, in any communications with customers;

(c)     to refrain from destroying, erasing or otherwise making unavailable for further proceedings in this matter, any records or documents (including data or information maintained in computer files or other electronic storage media) in Defendants' possession, custody or control which were obtained from, or contain information derived from, any PSI records, which pertain to PSI's customers, or which relate to any of the events alleged in the Complaint in this action; and

(d)     to return all copies of PSI's trade secrets, as described in this Complaint;

8.     For a temporary restraining order, a preliminary injunction, and a permanent injunction, all enjoining Defendants and their agents, servants and employees from making any false representations to any persons or businesses Defendants know to have business relationships with Plaintiffs;

9.     For the Court to declare the legal rights and duties that exist between Plaintiffs and Defendants, and each of them;

10.     For exemplary and punitive damages in an amount to be determined as appropriate to punish Defendants and deter like conduct;

11.     For prejudgment and post judgment interest at the maximum legal rate, as provided by the laws of California, as applicable, as an element of damages which PSI has suffered as a result of the wrongful and illegal acts complained of herein;

12.      For reasonable attorneys' fees and costs; and

13.      For such other and further relief as the Court may deem just and proper.

### **DEMAND FOR JURY TRIAL**

Plaintiffs PSI, pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, demand trial by jury as to all legal matters contained in the Complaint.


Dated:  April 25, 2012                 GREENBERG TRAURIG, LLP


                     By: _/s/ Kurt A. Kappes_____
                         Kurt A. Kappes
                         Jennifer M. Holly
                         Attorneys for Plaintiffs, Pyro
                         Spectaculars, Inc.; Pyro Spectaculars
                         North, Inc.; and Pyro Events, Inc.